No. 13,404.

## SUCCESSION OF MRS. C. A. LANPHIER.

### SYLLABUS.

1. Where a mother and tutrix in anticipation of her second marriage has made through their undertutor a settlement, or *dation en paiement* with her children, in the form of a donation, the parties have the right, on finding the form of the act an obstacle in the way of the sale of the property, to set aside the donation, sell the property and apply the price to the payment of the children. The children of the second marriage have no right under these circumstances to force a collation from those of the first by reason of this donation. (Howe vs. Scudder).

2. The plaintiffs in a partition suit between heirs have the right when the defendants set up, in the District Court, a claim against the succession to urge their defense from such claim by pleadings, and, also, to advance claims of their own. The usual practice is to present such claims before the notary to whom the matters are referred for a partition, and for him to send the parties back to the court for settlement in the event of a contest. The action of the court in permitting matters to be determined before reference is not an error, particularly when, at the request of parties, the case has been continued for time to examine claims.

3. Where a wife has separate property from which are derived revenues during marriage sufficient to pay a separate debt which she owes, payment of such debt during marriage will not be presumed to have been made out of community funds, by reason of the simple fact that the husband has occasionally received the rents from leases of her property not made by himself, particularly where the husband has gone into bankruptcy and has placed no claim against his wife upon his schedule nor referred to it.

4. A statement by a husband on his schedule that he has furniture to the extent of one hundred and twenty-five dollars, which he claims is exempt,

does not estop his heirs from claiming that furniture shown to have been in the family residence during his marriage, belonged to the community between himself and his wife. The question in such case is one of the ownership, not value.

A PPEAL from the Civil District Court, Parish of Orleans—*King, J.*

*Hugh C. Cage* and *Samuel L. Gilmore* for George B. Penrose *et als.,* Plaintiffs, Appellees.

*Benjamin Rice Forman* for Harry P. Lanphier and Edward S. Lanphier, Defendants, Appellants.

The opinion of the court was delivered by

NICHOLLS, C. J. It is admitted by all parties that the dwelling on Camp street sought to be partitioned herein, belonged to the separate estate of Camille Adele Bright, who, at the time of her death, was the widow of James S. Lanphier, of whom all the parties to the action are heirs, and that the extent of the interests of the different parties therein is correctly stated in plaintiffs' petition for a partition. It is denied, however, by Henry P. Lanphier and Edward S. Lanphier, that the furniture therein belongs to the separate estate. It is averred on the contrary, that it was purchased and paid for during the community between her and her second husband, James S. Lanphier, of whom, the said Henry P. and Edward S. Lanphier are heirs, and that it should be partitioned on that basis. It is additionally claimed by these last named parties that the heirs of Mrs. Camille A. Bright, issue of her first marriage with Clement B. Penrose, should be made to collate the sum of $3888.88, by reason of a donation made to her sons Clement B. Penrose and George B. Penrose on the 22nd of November, 1869, of seven-eighths of her lots of ground and the improvements thereon, on Gasquet street, in New Orleans; a further sum of eight hundred and fifty dollars by reason of a donation to them on the 15th September, 1885, of that amount to assist them in building a house—on property which they had purchased on Seventh street—and that the separate estate of Mrs. Lanphier is indebted to the second community, that is the one between herself and her husband, James S. Lanphier, in the sum of three thousand six hundred and forty-seven dollars and fifty-five cents, for that amount paid by James S. Lanphier out of the funds of

that community in paying the note with interest which his wife had executed before her second marriage in representation of the credit portion of the price of the property on Camp street which she had purchased during her first widowhood.

Upon the advancing of these claims, George B. Penrose and the minor children of his deceased brother, Clement B. Penrose, set up contingently to meet the same, a claim of three thousand three hundred and fifty dollars for occupying for five years and seven months by James S. Lanphier and his wife of their house on Seventh street, and a further claim of two thousand and nine hundred and fifty-two dollars for moneys advanced at different times by them and used in supporting the family.

George B. Penrose also advanced two claims, the first, a claim of a thousand and forty-seven dollars paid by him to Harry P. Lanphier, being an amount which the latter claimed that he had advanced to his mother and had expended in paying debts due by her; and the second—a claim that he, himself (George B. Penrose) had paid various debts due by the succession to an amount of four hundred and fifty-two dollars.

The claims of H. P. and Edward S. Lanphier were rejected and those advanced by George B. Penrose were recognized and ordered to be enforced by the partition. The property on Camp street and the furniture therein were ordered to be sold and a partition made between the parties. Harry P. and Edward S. Lanphier appealed.

No amendment of the judgment was asked by the appellees.

The claims set up by the Penroses were presented in a paper styled a replication, which was offered to be filed when the case was called for trial. Objection was made to the filing of this paper on the ground that it was presented too late—for the further reason that the Penroses were estopped from setting up any claims as heirs of their father over and beyond the property set forth in the inventory made in the matter of his succession, which their mother under oath (by which they, as her heirs, were bound) declared that to be the only property left by and belonging to her husband's succession; and for the further reason that the claims advanced were barred by the prescription of four and five years which they pleaded.

The court overruled the objections. In reference to the first objection the court stated that there was no law to prevent the plaintiffs in the original suits from filing an answer to an answer filed by defend-

ants in a partition suit, and setting up their defense in a demand for a collation in an answer. That the practice was for objections to be made before the notary—and the notary to note them and refer the proceedings to the court for settlement, under the Article of the Code; that while overruling the objection he would grant the defendants a continuance if they asked one, and the continuance being claimed the case was continued.

In reference to the other objections the court stated that if the suit were one in which George B. Penrose and the heirs of Clement B. Penrose were claiming that the succession of their mother was indebted to them, the pleas of prescription and estoppel would probably be well taken, but that it understood the claim and testimony in support of them were urged as a defense to that made by the Messrs. Lanphier that the separate estate of Mrs. Lanphier was indebted to the community and for collation of the Gasquet street property.

It ruled that the testimony could be received to support the claims and the claims themselves used as a defense.

The suit being a partition suit and the various claims of the heirs inter se having been advanced before the court prior to reference to a notary instead of having been postponed to be set up after such a reference, and then sent back to the court for a settlement as is usually the case, we see no ground of complaint to the court's action in view of the continuance granted to the defendants as their request. C. C.

The only claims for which present judgment, is actually asked by either of the plaintiffs, are those set up by George B. Penrose, for the payment by him of debts due by his mother. They were not barred by prescriptions pleaded. Harry P. Lanphier, one of the heirs, being one of the creditors so paid, is not in position to deny the correctness of his own claims. Geo. B. Penrose, another of the heirs having made the payment, is entitled to be reimbursed. (C. C. 1359.)

The first demand of the defendants to which we direct our attention is that of an indebtedness alleged to be due by the separate estate of Mrs. Lanphier to the community between James S. Lanphier and herself, as arising from the payment by Lanphier, out of the funds of that community, of the note of three thousand dollars which Mrs. Lanphier (then Mrs. Penrose) had executed prior to her second marriage in representation of the credit portion of the price of the Camp street property.

There is no evidence in the record showing whom that note was paid

by. The demand of the Lanphiers on this subject rests exclusively upon the fact that the note having been paid during *the second marriage* it *must be presumed* to have been been paid by the *second husband* out of funds of the *second community*.

In this particular case, the wife had separate property and separate funds of her own, amply sufficient to pay this note, which it is not shown were administered by the second husband. It is true that he collected some of these monies and paid them out, but he received them as monies due to his wife and so disbursed them. If Lanphier had rented out his wife's property in his own name and received the rents arising under these contracts he would have been "administering" the property of his wife, but if he himself or any one else leased out the property *in the name of his wife* and the husband merely received the rents—they would not fall into the community. Not only did Mrs. Lanphier have property and funds of her own, but the property and funds of her sons, Clement B. Penrose and George B. Penrose, were also in her hands. Defendants say that this latter property and funds were in the mother's hands as tutrix and it cannot be presumed or assumed that she used them illegally and improperly to pay her own debt. This argument loses its force under the circumstances in which it is presented and in the attitude which the parties stand to each other. The plaintiffs are not finding fault with any action of their mother or charging her with wrong; they have fully and completely settled with her. In support of their denial of the existence of any claim by James S. Lanphier for having paid the note of his wife, the plaintiffs sought to show by way of estoppel that he went individually into bankruptcy in 1878 and did not place his wife on his schedule as owing him or the second community any money, but that on the schedule of the partnership of Nelson Lanphier & Company, of which he was a partner, and which went simultaneously with himself into bankruptcy, the wife was placed as a creditor for $165.00.

It may be incidentally mentioned in connection with this matter of bankruptcy that Lanphier lived a number of years after his discharge in bankruptcy and died leaving no property whatever. His succession was never opened and the only assets which are claimed to have belonged to his succession is this claim particular against his wife's succession, and a claim for the ownership of the undivided half of the furniture in the Camp street property, which claim will be hereafter referred to.

The court allowed the bankruptcy proceedings to be introduced in evidence, but it overruled the plea of estoppel based thereon. It was of the opinion that Lanphier was not called upon to place this claim on his schedule; that admitting its existence, it was a debt due to the community existing between himself and his wife which could not be enforced or have any legal effect, except by a suit for a separation of property between husband and wife, or by death and settlement of the rights as between the community and spouses. That it could not, during the existence of the community, arise and be enforced; that it survived the bankruptcy and could be enforced by the heirs of the deceased after the termination of the community. The view we take of the situation, outside of this question, makes its discussion unnecessary.

We pass now to the claim for collation advanced by the Lanphiers. It is undoubtedly true that Mrs. Penrose did, during her first widowhood, make a donation to her two sons, Clement B. Penrose and George B. Penrose, then minors, of seven-eighths of the Gasquet street properties, but it is also true that donation was annulled and set aside and rescinded between the parties on the 25th day of May, 1885. This the parties had the right to do. Howe vs. Scudder, 45 Ann. 1103.

These properties had been bought by Clement B. Penrose (the first husband of Mrs. Lanphier), his brother, Joseph B. Penrose, and their sister, Anna Penrose (afterwards Mrs. J. B. Wilkinson), conjointly, each holding an undivided third, prior to the marriage of the first named party. After his marriage the first named acquired the other two-third interests. The latter have been treated throughout as a community acquisition, and the contract by which they were acquired as a contract of sale. Mrs. Wilkinson testifies that the consideration of the transfer of these two interests to her brother, Clement, was the transfer by him to her brother, Joseph and herself, of certain slaves which Clement owned. The act of conveyance is not in the record. It was testified to on the trial that the revenues of this entire property were received and used for her own account by Mrs. Lanphier from the date of her first husband's death, in 1859, to the time of the annullment of the donation in 1885. It was further testified to that the act styled an act of donation was not in reality an act of donation, but a transfer by the mother to her sons in settlement and liquidation of their rights.

The clear reason of the annulment and setting aside of the act as a donation was its acting as a difficulty in the way of a proposed sale of

the property to Bernard Bories by reason of its form, Mrs. Penrose having remarried and having, in 1885, children by her second marriage, which took place in November, 1869, and there being the possibility of an action later for the reduction of the donation as having been made by the donor in excess of the disposable portion.

Just prior to the annulment of the act of donation and prior to the act of sale of the property to Bories, to-wit: on the 15th day of May, 1885, Clement B. Penrose and George B. Penrose gave an acquittance in full to their mother for all indebtedness due to them, and directing the recorder of mortgages of the parish of Orleans to erase from his records the inscriptions therein which evidenced the existence of a general mortgage on her property by reason of her tutorship.

In the act of acquittance it was recited that the mother had rendered them, ten days prior to that date, a full account, accompanied by vouchers.

No such account appears in the record and it is questionable whether it was, in fact, ever exacted or given. This act of acquittance, given at that date and under the circumstances it was made, corroborates the contention that the act styled the "donation" was not, in point of fact, such, but a settlement between the parties and a *dation en paiement* which the minors, on reaching majority, accepted and ratified.

The acquittance, like the act of annulment, was also given merely to facilitate the sale of the property and to free it from the general mortgage with which it would be encumbered by registry of the tutorship— by annulment of the donation. There was, unquestionably, a large indebtedness due to Clement B. Penrose and George B. Penrose by their mother at the time of the act of donation, and at the time of the act of acquittance, an indebtedness larger than the value of seven-eighths of the property; when the act of donation was set aside this indebtedness revived with the evident intention, at the time of the acquittance on the part of the parties, to be at once again extinguished through receipt, by the sons, of the price of the sale of the property to Bories. The sons did, in fact, receive the price of the whole property arising from the sale; for no part was it received, in our opinion, as a donation from their mother. The property, in its entirety, was sold by Mrs. Lanphier, Clement B. Penrose and George B. Penrose, to Bernard Bories on the 26th of May, 1885, for three thousand nine hundred and twenty dollars.

We have next to consider the claim of the defendants that the furni-

ture in the Camp street property belongs to the community between Mrs. Lanphier and her second husband, James S. Lanphier, and not to her separate estate.

The claim was rejected on the ground that James S. Lanphier had, on the verified schedule of his individual bankruptcy, made a return that he was possessed of "household goods, wearing apparel, furniture, etc., valued at $125.00, claimed to be exempt."

The court was of opinion that this statement estopped his heirs from claiming furniture in excess of that amount. If demand of the defendants was against the plaintiffs for a sum of money due them in some way by reason of the furniture, it may be that the valuation placed upon it by Lanphier would go far to fix the value as not being at utmost $125.00, but see no element of estoppel in favor of the plaintiffs by the statement made. The claim of the defendants is that certain furniture now existing in kind in the Camp street house was bought by James S. Lanphier, during his marriage with plaintiffs' mother, and paid for by him out of community funds. That it is property belonging to the second community; that it should be so recognized to be and that in making a general settlement between the parties its proceeds should be dealt with on that basis.

We think the court erred in its conclusions on this point, and that it should have passed upon this claim on its merits, and not disposed of and rejected it on the ground of estoppel. We do not think the record in condition such as to enable us to decide it. It is true that the evidence discloses that the furniture which is now in the dwelling on Camp street was there during the marriage between Lanphier and his wife, and that there are a number of receipted bills for furniture bought during the marriage, in the name of James S. Lanphier, but there are also bills for furniture purchased just before the marriage of the parties; and evidence that Mrs. Penrose, independently of his, owned furniture of her own.

We think the identity of the different articles of furniture, with that purchased during the marriage, should be shown. We do not find the evidence on the subject of this furniture as being furniture bought during the second marriage, sufficiently clear to reach a fixed conclusion about it, and we think the judgment of the District Court, rejecting this particular claim, should be reversed, and that the matter should be further investigated below.

It is therefore ordered, adjudged and decreed that the action and

judgment of the District Court, in so far as it rejected the claim made by the defendants, H. P. and Edward S. Lanphier, that the furniture in the house on Camp street belonged to the community between James S. Lanphier and his wife, Camille A. Bright, and not to the separate estate of the latter, be and the same is hereby annulled, avoided and reversed.

It is further ordered, adjudged and decreed that the judgment appealed from, except in so far as herein reversed, is affirmed. It is further ordered, adjudged and decreed that the cause be remanded to the lower court for further proceedings, according to law, with directions to receive evidence to determine whether the contents of the property on Camp street, herein referred to, belonged to the separate estate of Mrs. James S. Lanphier or to the community between herself and her husband, James S. Lanphier, and to pass upon and decide that issue upon evidence. It is further ordered that costs of the appeal be borne by the appellees. Costs of the lower court to await the final judgment in the lower court.

Rehearing refused.